IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YASUSHI KALEOHANO-ARAKAKI, #A0115950,<br><br>            Plaintiff,<br><br>      vs.<br><br>STATE OF HAWAII, *et al.*,<br><br>            Defendants. | CIVIL NO. 24-00131 DKW-RT<br><br>ORDER (1) DISMISSING PRISONER COMPLAINT FOR A CIVIL CASE; AND (2) DENYING MOTION FOR COURT APPOINTED COUNSEL |

Before the Court is a Complaint for a Civil Case filed pursuant to 42 U.S.C. § 1983 by pro se Plaintiff Yasushi Kaleohano-Arakaki, ECF No 1, and his "Motion: Request for Court Appointed Counsel," ECF No. 4.[1]  ECF No. 1.  In the Complaint, Kaleohano-Arakaki alleges that his safety was threatened, and he was denied adequate medical care during his incarceration at the Hawaii Community Correctional Center (HCCC) in Hilo, Hawaii and at the Halawa Correctional Facility.[2]  *See* ECF No. 3 at PageID.11–PageID.13.  After conducting the required

---

[1]Kaleohano-Arakaki is currently incarcerated at the Halawa Correctional Facility.  *See* ECF No. 1-1, at PageID.6; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0115950"; and select "Search") (last visited Apr. 25, 2024).

[2]Kaleohano-Arakaki names as Defendants the State of Hawaii, HCCC Medical, Dr. Caroline Mee, Dr. Brent Burrougs, and an unnamed nurse at the HCCC.  ECF No. 1 at PageID.1–PageID.3.  It is unclear if Kaleohano-Arakaki instead meant to name Dr. Brent A. Burroughs, a neurologist with the Queen's Health System.

screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court DISMISSES the Complaint with partial leave to amend. If Kaleohano-Arakaki wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **May 20, 2024**. In the alternative, Kaleohano-Arakaki may inform the Court in writing on or before **May 20, 2024** that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g). Kaleohano-Arakaki's Motion for Court Appointed Counsel, ECF No. 4, is DENIED without prejudice.

## I. BACKGROUND[3]

On an unspecified date, a "gang of inmates" at the HCCC "attacked" Kaleohano-Arakaki. ECF No. 3 at PageID.11. During the incident, Kaleohano-Arakaki was knocked unconscious. *Id.* A cellmate told Kaleohano-Arakaki that he was kicked repeatedly during the incident. *Id.* Some of the kicks were to Kaleohano-Arakaki's head. *Id.* The incident ended after Kaleohano-Arakaki's cellmate intervened. *Id.*

When Kaleohano-Arakaki regained consciousness the next morning, he ached from head to toe. *Id.* at PageID.12. His vision was blurred, and his right

---

[3]Kaleohano-Arakaki's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

arm was trembling. *Id.* Kaleohano-Arakaki went to the medical unit and was seen by a nurse. *Id.* A week later, Kaleohano-Arakaki visited Dr. Mee. *Id.* Dr. Mee told Kaleohano-Arakaki that the pain in his shoulder was attributable to "frozen shoulder," and she ordered X-rays of that area. *Id.* During a second visit, Dr. Mee gave Kaleohano-Arakaki exercises for his shoulder. *Id.*

Approximately three months later, Kaleohano-Arakaki was transferred from the HCCC to the Halawa Correctional Facility ("HCF") on Oahu. *Id.* By that time, Kaleohano-Arakaki was unable to perform the recommended shoulder exercises because of his trembling right arm. *Id.* As Kaleohano-Arakaki was waiting to complete his medical screening upon entering the HCF, a doctor noticed Kaleohano-Arakaki's arm trembling and asked when it had begun. *Id.* at PageID.13. Kaleohano-Arakaki told the doctor that the trembling started approximately three months earlier. *Id.* When the doctor asked Kaleohano-Arakaki if he had received an MRI, Kaleohano-Arakaki explained that X-rays were taken of his shoulder. *Id.* The doctor asked if any imaging was taken of Kaleohano-Arakaki's head. *Id.* The doctor then said to Kaleohano-Arakaki, "Don't you know you had a stroke." *Id.* The doctor ordered an MRI. *Id.*

"Many months" later, an MRI was performed. *Id.* Kaleohano-Arakaki then visited Dr. Burrougs, a neurologist. *Id.* Dr. Burrougs explained to Kaleohano-Arakaki that he had a blood clot in his brain. *Id.* Dr. Burrougs could not say

whether the blood clot was caused by the assault or something else. *Id.* According to Kaleohano-Arakaki, Dr. Burrougs decided not to treat the blood clot. *Id.*

Kaleohano-Arakaki commenced this action by signing the Complaint on March 10, 2024. ECF No. 1 at PageID.6. Kaleohano-Arakaki alleges that his safety was threatened, and he was denied adequate medical care. ECF No. 3 at PageID.11–PageID.13. He seeks unspecified damages. ECF No. 1 at PageID.6. The Court granted Kaleohano-Arakaki's Application to Proceed In Forma Pauperis by a Prisoner, ECF No. 6, on April 22, 2024, ECF No. 7.

## II.  STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Court must grant leave to amend if it appears that the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III.  DISCUSSION

**A.     Legal Framework for Claims Under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (alteration in original) (quoting 42 U.S.C. § 1983). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a

5

person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

There are two situations in which a state official might be liable to suit under § 1983. "First, plaintiffs may seek damages against a state official in his personal capacity." *Cornel*, 37 F.4th at 531. "Second, state officials are 'persons' under § 1983 when sued for prospective injunctive relief." *Id*. This second situation applies "where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Id.* (internal quotation marks omitted).

**B.     Eleventh Amendment**

Kaleohano-Arakaki names as Defendants both the State of Hawaii and "HCCC Medical." *See* ECF No. 1 at PageID.1.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984). It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law. *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Nor does it bar suits for damages

against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

It is well settled that "Hawaii has not unequivocally waived its sovereign immunity," *Thompson v. Paleka*, Civ. No. 17-00531 SOM-KJM, 2017 WL 5309608, at *4 (D. Haw. Nov. 13, 2017); and Congress has not overridden that immunity for civil rights actions brought pursuant to 42 U.S.C. § 1983, *Will*, 491 U.S. at 66. Thus, any claims against the State of Hawaii are barred by the Eleventh Amendment and therefore DISMISSED with prejudice. *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment." (citation omitted)).

Likewise, any claims against the HCCC are barred by the Eleventh Amendment and DISMISSED with prejudice. *See McGinnis v. Halawa Corr. Facility*, Civ. No. 20-00567 DKW-KJM, 2021 WL 115654, at *2 (D. Haw. Jan. 12, 2021) ("Any claims against . . . the [Halawa Correctional Facility] are barred by the Eleventh Amendment.").

Kaleohano-Arakaki does not say whether the individual Defendants are named in their official or individual capacities. Any claims for money damages against Defendants in their official capacities would be barred by the Eleventh Amendment. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The

Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity."). The Eleventh Amendment does not bar claims for money damages against Defendants in their individual capacities. If Kaleohano-Arakaki files an amended pleading, he may proceed against the individual state employee Defendants only in their individual capacity.

**C.    Threat to Safety**

Kaleohano-Arakaki alleges that his safety was threatened while he was incarcerated at the HCCC. ECF No. 3 at PageID.11.

Kaleohano-Arakaki does not say, however, whether he was a pretrial detainee or a convicted inmate when the complained-of conduct occurred. Kaleohano-Arakaki's status determines the applicable legal standard. *See Vazquez v. County of Kern*, 949 F.3d 1153, 1163–64 (9th Cir. 2020) ("[T]he Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*, while the Eighth Amendment only prevents the imposition of *cruel and unusual* punishment of *convicted prisoners*." (internal quotation marks and citation omitted)). Kaleohano-Arakaki also does not say who allegedly threatened his safety, when, or how they did so. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." (citation omitted)). Without additional information, Kaleohano-Arakaki's threat to safety claim cannot

proceed, and it is DISMISSED with leave to amend. If Kaleohano-Arakaki chooses to file an amended pleading, he should consider the following legal standards.

### 1. Fourteenth Amendment

If Kaleohano-Arakaki was a pretrial detainee when the complained-of conduct occurred, then the Fourteenth Amendment applies.

In general, "under the Due Process Clause, a [pretrial] detainee may not be punished prior to an adjudication of guilt[.]" *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014). Thus, "the Due Process Clause protects a detainee from certain conditions and restrictions of pretrial detainment" that "amount to punishment of the detainee." *Bell*, 441 U.S. at 533, 535.

To establish a threat-to-safety claim under the Fourteenth Amendment, the plaintiff must show that:

> (1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (formatting and footnoted omitted).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks, brackets, and citations omitted). A pretrial detainee who asserts a threat-to-safety claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### 2. Eighth Amendment

If Kaleohano-Arakaki was a convicted inmate, then the Eighth Amendment applies.

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments." U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotation marks and citations omitted). A prison official violates the Eighth Amendment, however, only when two requirements are met. "First, the deprivation alleged must be objectively, sufficiently serious." *Id.* at 834 (citations

omitted).  "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* (citation and footnote omitted).  Second, the plaintiff must show deliberate indifference—that is, that "the [prison] official kn[ew] of and disregard[ed] an excessive risk to inmate . . . safety."  *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

**D.    Medical Care**

Kaleohano-Arakaki also alleges that he was denied adequate medical care.  *See* ECF No. 3 at PageID.12–PageID.13.  Again, Kaleohano-Arakaki does not say whether he was a pretrial detainee or a convicted inmate when his rights were allegedly violated.  In addition, to the extent Kaleohano-Arakaki alleges that Dr. Burrougs violated his rights, *see id.* at PageID.3, he fails to allege any facts showing that Dr. Burrougs was a state actor for purposes of 42 U.S.C. § 1983.  *See Pierce v. Stone*, Case No. 1:17-cv-01614-DAD-BAM (PC), 2018 WL 2287891, at *2 (E.D. Cal. May 18, 2018) (dismissing claim against a neurologist at a private hospital because plaintiff did not "allege that there [was] any contractual or close nexus between the hospital/[doctor] and the prison"), *report and recommendation adopted*, Case No. 1:17-cv-01614-DAD-BAM (PC), 2018 WL 10580737 (E.D. Cal. Oct. 3, 2018).  Kaleohano-Arakaki's medical care claims are DISMISSED

with leave to amend. If Kaleohano-Arakaki opts to file an amended pleading, he should consider the following legal standards.

   1. **Fourteenth Amendment**

Medical care claims brought by pretrial detainees arise under the Fourteenth Amendment's Due Process Clause. *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). "[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Id.* at 1124–25.

A pretrial detainee asserting a failure to provide adequate medical care claim must show that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

Regarding the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (quotation marks and citation omitted) (alteration in

original). The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"; the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

### 2. Eighth Amendment

To establish a claim of inadequate medical care, a convicted prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 785 (internal quotation marks and citations omitted). "Serious medical needs can relate to physical, dental and mental health." *Id.* (internal quotation marks and citations omitted).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786 (internal quotation marks and citations omitted) (alterations in original). This is a "high legal standard." *Toguchi v.*

*Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Edmo*, 935 F.3d at 786 (citation omitted). "In other words, [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* (internal quotation marks and citation omitted) (alteration in original).

### E.     Doe Defendants

Kaleohano-Arakaki includes in the Complaint an unnamed "facility nurse." ECF No. 1 at PageID.2.

Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. This is because it is usually impossible to serve a summons and pleading on an anonymous defendant. The use of Doe Defendants is generally disfavored in federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nonetheless, the use of Doe Defendants is sometimes necessary when a plaintiff cannot discover the identity of the defendant before filing the operative pleading. The burden of identifying and serving a defendant is, at all times, on the plaintiff—the Court will not undertake to investigate the name and identity of an unnamed defendant on plaintiff's behalf.

If Kaleohano-Arakaki can cure the deficiencies in his claims described above, he may use the discovery process for a limited period set by the Court to

14

obtain the names of any unknown Defendants, unless it is clear that discovery would not uncover their identities, or that the amended complaint will be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

### F.     Motion for Counsel

Kaleohano-Arakaki also moves for court-appointed counsel. ECF No. 4.

There is no constitutional right to counsel in a civil case where, as here, a litigant's liberty is not at issue. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *Wright v. Dir. of Corr.*, 443 F. App'x 289, 293 (9th Cir. 2011). A court may request, but cannot compel, counsel to appear pro bono on a plaintiff's behalf. *See* 28 U.S.C. § 1915(e)(1); *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989). The appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) is limited to cases presenting "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). In determining whether "exceptional circumstances" exist, courts consider "the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* (internal quotation marks and citation omitted). Neither of these considerations is dispositive, so they must be viewed together. *Id.*

Here, Kaleohano-Arakaki has not shown that his case presents exceptional circumstances. Although Kaleohano-Arakaki notes that he cannot afford counsel, he is in administrative segregation, he has limited access to the law library, and counsel would be better able to present evidence and cross-examine witnesses, these allegations are not enough. *See Tilton v. Brown*, No. 2:12-cv-02020 LKK DAD P, 2013 WL 3804583, at *3 (E.D. Cal. July 19, 2013) ("Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel."), *adhered to on reconsideration*, No. 2:12-cv-02020 LKK, 2013 WL 4647984 (E.D. Cal. Aug. 28, 2013).

The Court also notes that the issues presented in the Complaint are not complex. Further, it appears that Kaleohano-Arakaki is able to articulate the facts underlying his claims. In addition, at this point, it is too early to tell if Kaleohano-Arakaki's claims are likely to succeed. Accordingly, the Motion, ECF No. 4, is DENIED without prejudice to Kaleohano-Arakaki filing another request if the operative pleading is served, and Defendants have filed an Answer or other response.

## IV.  LEAVE TO AMEND

The Complaint is DISMISSED with partial leave to amend. Kaleohano-Arakaki must file any amended pleading on or before **May 20, 2024**. Kaleohano-

Arakaki may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Kaleohano-Arakaki must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

### V.  28 U.S.C. § 1915(g)

If Kaleohano-Arakaki fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the

United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1) The Complaint, ECF No. 1, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) with partial leave to amend.

(2) Kaleohano-Arakaki must file any amended pleading on or before **May 20, 2024**.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Kaleohano-Arakaki may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Kaleohano-Arakaki may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) Kaleohano-Arakaki's "Motion: Request for Court Appointed Counsel," ECF No. 4, is DENIED without prejudice.

(6) The Clerk is DIRECTED to send Kaleohano-Arakaki a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: April 29, 2024 at Honolulu, Hawai'i.



/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

---

*Yasushi Kaleohano-Arakaki v. State of Hawaii, et al.;* Civil No. 24-00131 DKW-RT; **ORDER (1) DISMISSING PRISONER COMPLAINT FOR A CIVIL CASE; AND (2) DENYING MOTION FOR COURT APPOINTED COUNSEL**